The **PEOPLE OF the TERRITORY OF GUAM**, Plaintiff–Appellee,

v.

**Francis L. GILL, Defendant–Appellant.**

No. 94–10230.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 1995.

Decided July 18, 1995.

**690**

Barry K. Tagawa, San Francisco, CA, for defendant-appellant.

J. Andrew Artero–Boname, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

Before: HUG, ALARCON and TROTT, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

Francis L. Gill appeals the District Court of Guam, Appellate Division's affirmance of his jury conviction in Guam Superior Court for conspiracy to commit theft of immovable property, attempted theft, and conspiracy to tamper with records.

We have jurisdiction over this timely appeal pursuant to 48 U.S.C. § 1424–3(c). We affirm the jury conviction on all three charges, but remand for correction of a clerical mistake.

## BACKGROUND

### 1. *Guam's Land Registration System*

This case involves an alleged attempt by Gill, an attorney, to obtain title to government land through the manipulation of Guam's land registration system. Guam's Land Title Registration Act, codified at 21 Guam Code Ann. §§ 29101–29206, is based on the Torrens system of land registration. Under this system, a claimant of a particular piece of property may submit a draft survey map of the claimed land to the Guam Department of Land Management ("Land Management") for preliminary approval. After the map is returned, and any corrections suggested by Land Management are made, a final map, signed by both the claimant and surveyor, may be filed with Land Management for approval and recordation.

Once the map has been accepted, a claimant may petition the superior court for a decree of title. *See id.* § 29105. The claimant's petition must be supported by a survey map and some evidence of ownership. *Id.*

§§ 29105, 29106. If, after public notice, there is no objection to the petition, the "land court" generally will enter a decree in favor of the claimant and issue a certificate of title. *Id.* §§ 29115, 29123. One year from the date the land registration proceeding concludes, the title to the property in the registered owner becomes uncontestable, unless it can be shown the title was obtained by fraud. *Id.* § 29146. Of course, if the property is conveyed to a bona fide purchaser, allegations of fraud cannot deprive the new owner of title. *Id.* § 29139.

### 2. *Facts and Prior Proceedings*

Gill was charged with three counts of attempted theft of immovable property, 9 Guam Code Ann. §§ 13.10, 43.30(b), one count of conspiracy to commit theft, 9 Guam Code Ann. §§ 13.30, 43.30(b), and one count of conspiracy to tamper with records, Guam Code Ann. §§ 13.30, 46.25. These charges stem from Gill's participation in the creation and recordation of maps for four parcels of property on Guam.

At trial, the government presented evidence indicating that Gill, with the cooperation of surveyor Thomas T. Anderson and Land Management employee Joseph B. Cruz, sought to gain title to land he did not own, by obtaining Land Management approval of survey maps that were deliberately drawn to encompass government land. Apparently, Anderson was able to secure Land Management approval of the bogus maps because of his "good contacts" within the agency. In some instances, Anderson, with the help of Cruz, was able to procure phony tax assessment records for the "new" land.

The government's evidence included the testimony of Anderson and the introduction of the counterfeit maps. For example, Anderson testified that Gill asked him to survey the lots Gill had purchased so as to include land outside the parcels' boundaries, that Gill paid Anderson four times the going rate for his services, that Gill was aware of Anderson's "good contacts" at Land Management, that Gill was surprised when Anderson's contacts resulted in the approval of the fabricated maps, and that Gill intended to use the maps as evidence of ownership.

The jury also was able to compare maps of the various parcels. The maps demonstrated the size of a parcel when purchased by Gill and the size of the same parcel after it had been enlarged for Land Management approval. The maps fabricated for the purpose of Land Management approval were signed by Gill.

Finally, the government elicited testimony from Frank Castro, Director of Land Management, and Jimmy Camacho, a Land Management employee, that the land encompassed by the counterfeit maps was government land.

The jury returned guilty verdicts on all three charges. The superior court entered a judgment of conviction on the attempted theft charge, but did not enter judgment on the conspiracy to commit theft charge. The superior court determined that 9 Guam Code Ann. § 1.22 "prevent[ed] a final conviction for conspiracy where the criminal objectives of that conspiracy are separately convicted upon." On the last charge, conspiracy to tamper with records, the superior court entered a judgment of conviction pursuant to 9 Guam Code Ann. § 55.10, even though Gill was tried, and the jury was instructed, on a charge arising under 9 Guam Code Ann. § 46.25.

Gill appealed the convictions to the Appellate Division of the District Court of Guam. In an unanimous decision, the court affirmed. Gill timely appeals, claiming a multitude of errors.

### DISCUSSION

### I

■ Gill first contends that the existence of Guam's land registration system precludes the government's use of 9 Guam Code Ann. § 43.30(b) to prosecute Gill for attempted theft of government land. Section 43.30(b) criminalizes behavior where the actor "unlawfully transfers immovable property of another or any interest therein with intent to deprive him thereof." Thus, the government was required to prove that Gill (1) took a substantial step toward (2) causing an unlawful transfer of immovable property (3) of

another (4) with the intent to deprive the owner of his interest. Relying on the statutory scheme created by Guam's land registration system, Gill advances three reasons why his actions were not properly the subject of a criminal prosecution.

### a. A Civil Remedy

Gill correctly notes that he could not effect a transfer of the disputed property without adjudicating the ownership issue in a "land court." He contends that any injury claimed by the government was subject to correction during a land registration proceeding and therefore his conduct could not amount to an attempted theft of real estate.

■ In making this argument, Gill implies that the existence of a potential civil remedy bars the government's use of the criminal statute. However, commentary to Model Penal Code ("MPC") § 223.2, the provision upon which 9 Guam Code Ann. § 43.30(b) was modeled, indicates that the availability of a civil proceeding does not make criminal prosecution for theft inappropriate "in cases where a person seeks to benefit himself ... through the illegitimate transfer of interests in real property." MPC § 223.2 cmt. 5, at 173. "There is little to distinguish such cases from any other attempt to secure economic benefit at the expense of another." *Id.*

■ Gill also assumes that the government must demonstrate as an essential element of its case that the defendant's activity was certain to achieve the prohibited result. No such requirement exists. Indeed, Guam does not recognize factual impossibility as a defense to an attempt charge. 9 Guam Code Ann. § 13.15. Whether Gill's use of the counterfeit maps would ultimately succeed in depriving the government of its land is irrelevant to Gill's criminal culpability.

### b. Determination of Ownership

Gill argues that he cannot be prosecuted for the theft of another's property because the government has not established via a land registration proceeding that Guam in fact owns the contested real estate. However, section 43.30(b) requires only that the criminal defendant unlawfully transfer "im-

movable property of another or *any interest therein.*" (Emphasis added.). Thus, criminal culpability under the statute is not necessarily dependent on a demonstration that the defendant attempted to deprive another of fee simple title.

■ Similarly, the existence of a civil forum for establishing absolute ownership does not bar the government from proving, as part of its criminal case, that Gill sought to obtain the ownership interest of another by unlawful means. The purpose of the proscription encompassed by section 43.30(b) is to punish a person who seeks to benefit himself "through the illegitimate transfer of interests in real property." MPC § 223.2 cmt. 5, at 173. The purpose of the land registration proceeding is to adjudicate the legal title to real estate. When a civil statute and a criminal statute both address the same subject matter, but have different purposes, they are not mutually exclusive. *Cf. United States v. McCool,* 751 F.2d 1112, 1113 (9th 1985) (civil statute that provides exclusive remedy to owners who claim their copyrighted work is infringed does not preclude criminal prosecution for willful copyright infringement).

### c. Privilege to Infringe

Gill claims that under the Land Title Registration Act he was statutorily privileged to infringe on the government's property. According to Gill, Guam's statutory scheme permits any person who claims a ownership interest in a particular property to file a land registration proceeding for the purpose of determining the ownership rights to the land in question. *See* 21 Guam Code Ann. § 29105. Gill argues he should not be prosecuted for conduct the land registration system allows. This argument lacks merit. The cited section does not provide a safe harbor to an individual engaged in a scheme to obtain ownership of real estate through the use of bogus maps. *See* 21 Guam Code Ann. § 29138 (fraudulently obtained title is voidable).

### II

■ Gill next contends that the government failed to meet its various burdens at

trial. In reviewing these claims, we must determine whether "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Campbell,* 42 F.3d 1199, 1203 (9th Cir.1994) (internal quotation omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 1814, 131 L.Ed.2d 738 (1995). To the extent Gill attacks the sufficiency of the indictment, we review this question de novo. *United States v. Dischner,* 974 F.2d 1502, 1518 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993).

### a. *Attempt*

■ Gill claims that he "did not take any substantial step towards the transfer of another's interest in immovable property," and that as a matter of law, "recorded maps do not constitute an attempt to unlawfully transfer" real estate. The allegations contained in the indictment and the evidence presented at trial, however, show that Gill did more than merely file maps: he engaged Anderson to produce survey maps that included land he had no right to claim, he caused the bogus maps to be filed, he was aware of Anderson's "good contacts" within Land Management, and he intended to use the maps as evidence of ownership.

A person is guilty of an "attempt to commit a crime when, with intent to engage in conduct which would constitute such crime . . . he performs . . . an act which constitutes a substantial step toward commission of the crime." 9 Guam Code Ann. § 13.10. The facts alleged in the indictment and the evidence introduced by the government at trial could support a jury finding that Gill took a substantial step towards committing the crime of theft of immovable property. *Cf. id.* cmt. (substantial step includes the "fabrication of materials to be employed in the commission of a crime, . . . where such . . . fabrication serves no lawful purpose of the defendant under the circumstances").

### b. *Sufficiency of the Evidence*

■ Gill maintains that the government did not prove the property encompassed by the survey maps was in fact government land. We disagree.

First, section 43.30(b) requires only that the land subject to the theft be property of another. At trial the government presented ample evidence showing that Gill directed Anderson to draw the maps to include land to which Gill had no claim of right. This evidence included the testimony of Anderson and the introduction of the enlarged maps, signed by Gill.

Moreover, by statute, "all property of which there is no other owner" is owned by the Guam government. 21 Guam Code Ann. § 1202. Thus, by definition, Gill's efforts to assert control over land that he did not own, and that was not owned "by another," was an attempt to gain title to government land.

Second, contrary to Gill's assertion, the trial testimony of Frank Castro, Director of Land Management, demonstrated that some of the property included within the forged maps' boundaries was land the Guam government had surveyed and specifically claimed.

■ Lastly, two Land Management employees testified that the land in question was the property of the Guam government. Gill now attacks this testimony as improper, but he failed to raise an objection at trial. Failure to make a timely objection constitutes a waiver of that objection. *United States v. Rivera,* 43 F.3d 1291, 1295 (9th Cir.1995). The superior court's admission of the testimony was not plain error, *see id.; United States v. Pena–Espinoza,* 47 F.3d 356, 360 (9th Cir.1995), and the testimony was sufficient to establish the government's interest in the real estate.

### c. *Criminal Intent to Conspire*

■ Gill also argues the government failed to offer evidence establishing Gill's intent to engage in an illegal conspiracy to tamper with records.[1] Under 9 Guam Code

---

1. Gill challenges the government's case regarding both conspiracy charges. However, a judgment of conviction was not entered on the con-

spiracy to commit theft charge and Gill was not sentenced on account of that crime. Under Guam law, the government may prosecute the

Ann. § 46.25 the government was required to prove 1) a conspiracy 2) to falsify 3) any writing or record 4) with intent to deceive. The trial record is replete with evidence sufficient to allow a trier of fact to infer Gill's criminal culpability. *See United States v. Foster,* 57 F.3d 727, 729 (9th Cir.1995) (circumstantial evidence and inferences drawn therefrom are sufficient to sustain a conspiracy conviction). The testimony of Anderson indicated that Gill and Anderson enlarged the survey maps knowing the maps encompassed government land Gill, that Anderson told Gill the title to some of the lots was "no good," that Gill paid Anderson four times his normal fee to create the bogus survey maps, that Gill caused the falsified maps to be filed, that Gill was aware of Anderson's "good contacts" at Land Management, and that Gill was surprised when Anderson's contacts resulted in Land Management approval. Furthermore, at trial, the government introduced the counterfeit maps, surveyed by Anderson and signed by Gill, which demonstrated the enlargement of Gill's lots to include government land.

Viewed in the light most favorable to the prosecution, the evidence supported Gill's conviction on the conspiracy to tamper with records charge. *Cf. United States v. Homick,* 964 F.2d 899, 906 (9th Cir.1992) (three conversations indicating the defendant was aware of the other conspirators' fraudulent claim to ownership was sufficient evidence to allow a jury to find the defendant was a willing participant in the conspiracy).

defendant on multiple charges stemming from the same conduct, but the defendant may not be convicted of more than one offense if one of the charged offenses consists only of a conspiracy to commit the other. 9 Guam Code Ann. § 1.22(b). Because Gill was prosecuted, and a guilty verdict was returned, on both an attempted theft charge and a conspiracy to commit theft charge, the trial court did not enter judgment on the conspiracy charge. Thus, Gill's complaints concerning the theft conspiracy are not ripe for review. *Cf. United States v. Ripinsky,* 20 F.3d 359, 361–62 (9th Cir.1994) (return of a guilty verdict does not constitute a conviction until a judgment of conviction is entered).

**2.** A defendant violates 9 Guam Code Ann. § 46.25 if

knowing that he has no privilege to do so, he falsifies, destroys, removes, or conceals any

**III**

a. *Application of 9 Guam Code Ann. § 46.25*

▮ Finally, Gill attacks his prosecution pursuant to 9 Guam Code Ann. § 46.25. He claims section 46.25 prohibits falsification of *private* records, and does not reach falsification of *public* records. Apparently, Gill is contending he should have been charged under 9 Guam Code Ann. § 55.10, which makes it a crime for any person to tamper with *public* records.[2]

Section 46.25 and its companion section 46.20 are part of a chapter addressing forgery and fraudulent practices. On the other hand, section 55.10 is part of a chapter concerned with a defendant's interference with government operations and law enforcement. *See* 9 Guam Code Ann. ch. 55 cmt. Thus, the proscriptions embraced by chapter 46 are designed to punish fraudulent activity perpetrated against individuals, while chapter 55 prohibits conduct harmful to governmental operations.

The comment to section 46.20 indicates that the purpose of section 46.25, like the purpose of section 46.20, is to punish a defendant who falsifies a writing or record, or falsifies a writing or record that is recordable. *See* 9 Guam Code Ann. § 46.20 cmt. ("Section 46.25 completely overlaps § 46.20 and thus provides a lesser included offense."). Here, Gill was accused of conspiring with Anderson to falsify survey maps for

writing or record, with intent to deceive or injure anyone or to conceal any wrongdoing. A violation of 9 Guam Code Ann. § 55.10 occurs when the defendant

(1) knowingly makes a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by the government for information or record, or required by law to be kept by others for information of the government;

(2) makes, presents or uses any record, document or thing knowing it to be false, and with intent that it be taken as a genuine part of information or records referred to in Paragraph (1); or

(3) intentionally an unlawfully destroys, conceals, removes or otherwise impairs the verity or availability of any such record, document or thing.

recordation, for the purpose of depriving the government of its real estate. Thus, Gill's conduct fits within the proscription encompassed by section 46.25. Perhaps Gill could have been charged under section 55.10, which prohibits the knowing presentation of a false document for recordation, but contrary to Gill's contention, section 55.10 does not address Gill's prohibited conduct with more specificity.

The confusion regarding the applicability of section 46.25 and section 55.10 apparently infected the post-trial phase of Gill's proceedings. Although a guilty verdict was returned on the section 46.25 charge, the superior court inadvertently entered a judgment of conviction pursuant to section 55.10. At oral argument the government candidly acknowledged responsibility for this clerical error and asked that we remand for its correction. Gill's counsel did not object, and accordingly we grant the government's request. *See* Fed.R.Crim.P. 36.

### IV

#### a. *Waiver of the Remaining Issues*

 Gill concedes that the remaining issues he invites us to review were not raised in his appeal to the Appellate Division. Nevertheless, he maintains that Ninth Circuit case law allows us to hear these additional arguments because they address questions of law, and the pertinent factual record was fully developed below. The cases Gill cite for support, however, concern our willingness to consider issues not raised in the *trial court* but presented for appellate review. *See, e.g., Cristobal v. Siegel,* 26 F.3d 1488, 1493 (9th Cir.1994). In contrast, issues not presented to an appellate court in the opening brief are deemed waived, unless enforcement of the "waiver rule" would result in a manifest injustice. *See, e.g., United States v. Loya,* 807 F.2d 1483, 1486–87 (9th Cir.1987).

Because "this court has long recognized that, when sitting as the Appellate Division, the District Court of Guam 'functions as a local territorial appellate court,'" *Aguon v. Calvo,* 951 F.2d 1131, 1132 (9th Cir.1991), we have applied the waiver rule to issues not properly raised on appeal to the Appellate Division, *Guam v. Reyes,* 879 F.2d 646, 648–49 (9th Cir.1989). Our refusal to hear arguments not presented to the Appellate Division, comports with the characterization of our relationship to Guam's courts as being similar to our relations with the state courts. *Guam v. Yang,* 850 F.2d 507, 510 (9th Cir. 1988) (en banc). The Supreme Court has stated that "[i]n the exercise of our appellate jurisdiction to review the action of state courts we should hold ourselves free to set aside or revise their determinations only so far as they are erroneous and error is not to be predicated upon their failure to decide questions not presented." *McGoldrick v. Compagnie Generale Transatlantique,* 309 U.S. 430, 435, 60 S.Ct. 670, 673, 84 L.Ed. 849 (1940).

In light of this authority, and because there is no likelihood of a manifest injustice, we do not consider Gill's remaining arguments, raised for the first time on appeal to this court.[3]

### CONCLUSION

The decision of the Appellate Division is AFFIRMED, and the case is REMANDED for the limited purpose of correcting the clerical mistake that occurred during the entry of judgment.

---

**3.** One of the many issues Gill raises concerns the Guam Superior Court's failure to instruct the jury on the necessity of its finding that the property subject to the attempted theft had a value in excess of $1,500. At oral argument, however, Gill's counsel candidly conceded there was no question the land was worth more than the statutorily required minimum.